**Deborah ALBERT, Plaintiff,**

**v.**

**Marvin T. RUNYON, Jr., Postmaster General of the United States Postal Service, Defendant.**

**No. CIV. A. 98–10246–MEL.**

United States District Court, D. Massachusetts.

May 5, 1998.

Kenneth V. Kurnos, Kurnos, Capace & Margolin, LLP, Boston, MA, for Deborah Albert, Plaintiff.

Michael J. Pineault, United States Attorney's Office, Boston, MA, for Marvin T. Runyon, Postmaster General of the United States Postal Service, Defendant.

LASKER, District Judge.

This case raises unsettled questions about how the relatively new Family and Medical Leave Act fits into the already crowded intersection formed by the various laws regulating employment relationships—in particular, to what extent, if any, the FMLA supersedes various statutory and regulatory provisions governing an employer's ability to condition an employee's return to work following medical leave on a fitness-for-duty examination.

I.

Deborah Albert has been employed by the United States Postal Service in various capacities for the past seventeen years. She held her most recent position, as District Manager in charge of the Boston area, until September 29, 1997, when she became temporarily disabled due to clinical depression and took a leave of absence. Albert claims she became depressed because she was subjected to gender-based discrimination and harassment by her male supervisor, the Vice President of the Northeast Area. While on leave, Albert filed a charge of discrimination with the EEOC.

On November 26, 1997, Mary Burrell, Manager of Human Resources in the Northeast Area, wrote Albert a letter indicating that Albert met the threshold eligibility requirements for the FMLA, and requesting that she submit certification from her health care provider so that the Postal Service could determine whether her absence should be designated FMLA leave. Burrell also asked that Albert provide updated medical evidence of her continued inability to work.

On December 1, 1997, Albert's treating psychologist, Dr. Carolyn Smith, certified Albert fit to return to work, "provided that the Postal Service makes the necessary changes that assure her of freedom from gender-based harassment and discrimination, and reverses any previously taken discriminatory action." Dr. Smith sent Burrell a letter describing Albert's treatment and diagnosis on December 11, 1997. She wrote that she did not fill out the FMLA form provided by the Postal Service because it did not seem appropriate in light of Albert's recovery, but indicated that she used the form for reference and intended her letter to address all the material issues surrounding Albert's leave.

On December 17, 1997, Burrell wrote to inform Albert that the letters from her treating psychologist were "inadequate to assess" her ability to work, and that Albert had therefore been scheduled for a fitness-for-duty examination, to include a psychiatric evaluation, with Dr. Lawrence Strasburger. An attorney for the Postal Service sent a similar letter to Albert's attorney, telling him that the Service needed additional information to evaluate not only whether Albert was fit to return to work, but also whether her medical condition qualified for protection under the FMLA. Albert was placed on paid administrative leave pending the results of the scheduled examination, and warned that refusal to undergo the examination could be cause for disciplinary action, including termination.

Albert's attorney objected to the proposed examination, claiming that the Postal Service had no right to condition the plaintiff's return to work on a fitness-for-duty examination. In a letter dated December 30, 1997, he claimed that the Postal Service had no reason to doubt Dr. Smith's certification, and offered to have Albert provide additional information to alleviate any outstanding concerns. He also represented that Albert would submit to the examination if accompanied by a psychiatrist of her choosing to lessen the risk that the examination would be psychologically damaging.

The exchange of letters between plaintiff's counsel and the representatives of the Postal Service continued for another five weeks. Postal Service counsel refused Albert's request that she be permitted to bring someone to the examination, and further explained

the need for an examination by writing that Dr. Smith's letters were vague and conclusory in that they suggested limitations on Albert's activities without providing precise information about those limitations. Albert's attorney responded that Albert would be returning to work since she had complied with the relevant rules and procedures, but the Postal Services responded that Albert could not return without a report from the required fitness-for-duty examination. Albert's counsel also submitted a new certification of Albert's serious health condition from Dr. Smith—this one on the FMLA form provided by the Postal Service. The Postal Service agreed to review the new form to determine whether Albert's leave should be designated as FMLA leave, but insisted that "routine policy" still required Albert to undergo an examination to assess her ability to perform the requirements of her position. The Service did review the second certification, but continues to maintain that Dr. Smith's submissions do not provide a sufficient basis for assessing whether Albert's condition qualified for FMLA leave.

Albert filed this suit pursuant to 29 U.S.C. § 2617, which authorizes employees to file civil actions against their employers for violations of the FMLA. Albert asks to be restored to her job without having to undergo a psychiatric examination. She requests a permanent injunction preventing the defendants from conditioning her continued employment on submission to such an examination. She alleges that the Postal Service has violated the FMLA—and has not even followed its own guidelines—in requiring her to undergo examination, and she expresses concern that the real purpose of the proposed examination is not to determine her fitness for duty, but to gather information to build a defense to her EEOC claim and to provide a rationale for taking negative employment action against her in the future. Albert also complains that the contemplated scope of the proposed examination appears to go well beyond what could be relevant to the Postal Service's legitimate business concerns, and that the invasive nature of the examination could cause her substantial psychological harm.[1]

Albert moved for a preliminary injunction, and the parties agreed that she would remain on paid administrative leave pending this decision. The relevant issues have been fully briefed and the case is therefore ripe for final judgment in lieu of preliminary relief. In accordance with the provisions of Fed. R.Civ.P. 65(a)(2), the parties were informed that the court intends to make a final disposition of the case. Each party has since requested that summary judgment be entered in its favor. Both parties agree that there is an adequate factual basis and there has been sufficient legal argument to determine whether the Postal Service's conduct comports with the requirements of the FMLA. However, the Service contends that even if Albert's arguments as to the effect of the FMLA are accepted, she may not be granted permanent relief at this time since she has not proven she is entitled to the protections of the FMLA.[2]

## II.

Congress enacted the FMLA "to balance the demands of the workplace with the needs

1. The Postal Service argues that neither the purpose nor the scope of the proposed examination can be considered here, since objections to these matters must be made under different statutes and must proceed through administrative channels before reaching federal court. However, Albert challenges the fitness-for-duty examination only on the grounds that it is impermissible under the FMLA, and not because of its allegedly retaliatory purpose or over-broad scope. These assertions are merely part of the background of her complaint.

2. The Service requests that, if judgment is not now entered in its favor, a schedule be set to allow discovery as to Albert's ability to establish the foundational elements of an FMLA claim, in particular, whether she was eligible for FMLA leave, whether she suffered from a serious health condition entitling her to FMLA leave, and whether she provided substantiating documents in a timely manner. However, all relevant facts should be available to the Postal Service, and the Service has not explained what discovery it believes necessary for determining these issues. Accordingly, I am prepared to issue a final judgment, as detailed below, unless the Postal Service can show that discovery might support a good faith argument that Albert's leave is not covered by the FMLA. The Postal Service's own failure to decide whether Albert's leave qualifies as FMLA leave does not itself create a factual dispute as to her entitlement to the Act's protections.

of families" by "entitl[ing] employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b). Employees whose leave falls within the scope of the FMLA receive various protections, most notably, their leave may not be denied, their health benefits are maintained, and their jobs are protected. 29 C.F.R. § 825.100. The Act guarantees "eligible" employees of covered employers up to 12 workweeks of leave in any 12–month period for any of the above-mentioned reasons. 29 U.S.C. § 2612(a)(1). Those who have been employed by their current employer for at least 12 months, and who have worked at least 1,250 hours within the preceding 12–month period, are eligible for the protections of the FMLA. 29 U.S.C. § 2611(2)(A). The Act and its implementing regulations cover Postal Service employees. 29 C.F.R. § 825.109(b)(1).

An employee may take FMLA leave "[b]ecause of a serious health condition that makes [her] unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves ... inpatient care ... or continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The implementing regulations describe the various ways in which these definitions may be satisfied, and explain that "a serious health condition involving continuing treatment" includes a period of incapacity lasting more than three consecutive days and any subsequent related incapacity, coupled with at least two treatments by a health care provider. 29 C.F.R. § 825.114(a)(2)(i)(A).

An employee must notify her employer of the need for FMLA leave "as soon as practicable," but "need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. §§ 825.302, 825.303. It is the employer's duty to determine whether leave is FMLA-qualifying, and the employer must base its decision "only on information received from the employee." 29 C.F.R. § 825.208(a). Leave taken under the FMLA may be either paid or unpaid, depending on the employee's eligibility for leave under the employer's general policies. 29 C.F.R. § 825.207. Where an employee uses accrued paid leave, the employer may not have sufficient information to determine whether the leave is covered by the FMLA. In such a situation, "the employer should inquire further of the employee ... to ascertain whether the paid leave is potentially FMLA-qualifying." 29 C.F.R. § 825.208(a).

An employer may require employees seeking leave for medical reasons to provide certification of their serious health conditions from their health care providers. 29 U.S.C. § 2613(a). Such certification "shall be sufficient" if it includes the date on which the condition commenced, its probable duration, "appropriate medical facts ... regarding the condition," and "a statement that the employee is unable to perform the functions of [her] position." 29 U.S.C. § 2613(b). An employer may demand a second opinion if it "has reason to doubt the validity" of the provider's certification. 29 U.S.C. § 2613(c).

The FMLA provides that an employee returning from FMLA leave "shall be entitled" to be restored to her former position or an equivalent position of employment. 29 U.S.C. § 2614(a)(1). An employer may condition restoration on a uniform policy that requires each returning employee to obtain certification of her ability to resume work from her own health care provider. 29 U.S.C. § 2614(a)(4).

The implementing regulations provide that this certification "need only be a simple statement of an employee's ability to return to work." 29 C.F.R. § 825.310(c). The regulations allow the employer, with the employee's permission, to have its own health care provider contact the employee's health care provider "for purposes of clarification of the employee's fitness to return to work." *Id.* The employer may not request additional information, and may request clarification "only for the serious health condition for which FMLA leave was taken." *Id.* Moreover, "the employer may not delay the employee's return to work while contact with the health care provider is being made." *Id.*

III.

Albert maintains that her leave of absence from September 29, 1997 through December 1, 1997 qualifies as FMLA leave, and that she is thus entitled to the Act's protections. She claims that the Postal Service's refusal to allow her to return to work until she submits to a fitness-for-duty examination violates her right under the FMLA, 29 U.S.C. § 2614(a)(1), to be restored to her position of employment or an equivalent one. Albert argues that Dr. Smith's certification of her ability to work triggered her right to return to work under 29 U.S.C. § 2614(a)(4). She complains that the Postal Service not only was mistaken in deeming Dr. Smith's certifications inadequate, but also responded improperly to this perceived inadequacy. Rather than requesting clarification, as contemplated by 29 C.F.R. § 825.310(c), the Postal Service demanded that Albert submit to a psychiatric examination—which, she asserts, is not permitted by the FMLA or its implementing regulations.

For purposes of argument, the Postal Service assumes, but does not concede, that Albert qualifies for the protections of the FMLA, but contends that its actions are permissible under the Act. The Postal Service offers several justifications for having ordered Albert to undergo a fitness-for-duty examination. First, the Service claims, as it did in its letters to Albert and her counsel, that the examination is needed because Dr. Smith's submissions did not satisfy the FMLA's standards for medical certifications. Next, the Service maintains that the FMLA does not supplant long-standing agency policy allowing it to require employees to undergo fitness-for-duty examinations at any time, and to place them on paid administrative leave pending receipt of examination results. The defendant further claims that the proposed examination is permissible under the standards expressed in the Americans with Disabilities Act and the Rehabilitation Act of 1973, and accordingly argues that it would not violate the FMLA since the statutes are to be read consistently with one another.

Albert responds that the Service's demand that she undergo a psychiatric examination prior to reinstatement does not conform even to its own regulations, since Part 864.4 of its Employee and Labor Relations Manual requires only "medical certification" from returning employees. She argues further that even if Postal Service regulations did permit a fitness-for-duty examination in the present circumstances, they could not supersede the provisions of the FMLA. Albert also denies that the ADA and the Rehabilitation Act are implicated here since she is not currently under any disability and is not making any claim under the ADA.

IV.

Dr. Smith certified that Albert could return to work as of December 1, 1997. The Postal Service deemed Dr. Smith's letters inadequate to allow it to assess whether Albert would be capable of performing all her duties. Although Albert authorized the Service to contact Dr. Smith with any questions, her employer ignored this offer and instead scheduled Albert for an independent fitness-for-duty examination. The Postal Service did not specify whether it found Dr. Smith's certification inadequate to satisfy the FMLA standards, or its own agency standards, or both, but this purported justification for requiring Albert to submit to a psychiatric examination is insufficient in any event.

*A. FMLA Fitness-for-Duty Certification*

The FMLA does not authorize an employer to make its own determination of whether an employee is fit to return from FMLA leave following recovery from a serious health condition. Rather, an employer must rely on the evaluation done by the employee's own clinician and return the employee to work without delay upon receipt of medical certification. This certification may be a "simple statement of any employee's ability to return to work," and need not contain the specific information about the employee's condition that the Postal Service criticizes Dr. Smith for not providing. 29 C.F.R. § 825.310(c). Dr. Smith's letter is sufficient to satisfy the FMLA fitness-for-duty standard.

Moreover, requiring Albert to undergo a psychological examination was not the proper way for the Postal Service to resolve any

legitimate concerns it might have had about her abilities and possible restrictions on her activities. An employer with questions about the scope or adequacy of a medical certification may take advantage of the FMLA provision allowing it to contact the employee's clinician for clarification, but may not force an employee to submit to a further examination before allowing her to return to work. 29 C.F.R. § 825.310(c). In comments issued in conjunction with the final FMLA regulations, the Secretary of Labor explicitly declined to allow employers to seek a second opinion as to an employee's fitness for duty once the requisite certification has been received, noting the absence of any statutory authorization for such a procedure. 60 Fed. Reg. 2180, 2226 (Jan. 6, 1995)(Summary of Major Comments).[3] Accordingly, the Postal Service cannot justify its rejection of Dr. Smith's medical certification by claiming that it needed "specific information" about Albert's condition to evaluate her fitness to return to duty under the FMLA. If the Service believed that Dr. Smith's proviso against the alleged harassment of Albert indicated limitations on Albert's ability to work—as well it might, in view of its likely disagreement with Albert's characterization of previous events as discriminatory—it should have sought clarification from Dr. Smith. It did not.

*B. FMLA Certification of Serious Health Condition*

Nor can the Postal Service justify ordering a fitness-for-duty examination by claiming it needs to obtain additional information so it can determine whether Albert's absence should be designated FMLA leave. The Service maintains that the letters provided by Dr. Smith are insufficient to allow it to determine whether Albert's leave is protected under the FMLA, and suggests that this provides a further reason for conducting a fitness-for-duty examination.[4] Albert complains that the Postal Service appears to be claiming that the fitness-for-duty examination is permissible as the second opinion of an employee's health condition that may be sought under the FMLA, and contends that neither the procedural nor the substantive requirements for requesting a second opinion are satisfied here.

The Service's purported justification is without support because the FMLA allows an employer to demand a second opinion only if it has "reason to doubt the validity of the certification provided" by the employee's health care provider. 29 U.S.C. § 2613(c)(1). An employer may, however, have its "health care provider ... contact the employee's health care provider, with the employee's permission, for purposes of clarification." 29 C.F.R. § 825.307(a). An employer may also "inquire further" of an employee if it lacks "sufficient information about the reason for an employee's use of paid leave." 29 C.F.R. § 825.208(a). While the Postal Service deemed Dr. Smith's letters insufficient to allow it to "determine whether a designation of FMLA leave is appropriate," at no point prior to the onset of this litigation did it specify what information it felt Dr. Smith had omitted, or contact her or Albert to request clarification or information.

The FMLA limits the information an employer may request by providing that a certification "shall be sufficient" if it states

> (1) the date on which the serious health condition commenced;
>
> (2) the probable duration of the condition;

3. The Secretary wrote:

> Four commenters urged that the regulations provide for second and third medical opinions on fitness-for-duty certifications as in the case of the original medical certification.
>
> The statute expressly provides for second and third medical opinions regarding the original medical certification. No such provision is contained in the statute for the fitness-for-duty certification. The Department is unable to incorporate this suggestion in the Final Rule.

60 F.R. 2180,2226.

4. Although the Postal Service has assumed for the sake of argument that Albert is entitled to FMLA leave, and such an assumption implies that no examination is needed to determine whether her medical condition entitles her to the protection of the FMLA, this question must be addressed because the Service cites the need to make an FMLA determination as one of its reasons for requiring an examination. Of course, this analysis affects the Service's ability to argue that it needs discovery in order to address Albert's entitlement to FMLA leave.

> (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; [and ...]
>
> (4)(B) ... a statement that the employee is unable to perform the functions of the position of the employee.

29 U.S.C. § 2613(b). The implementing regulations include an "optional form" incorporating this information, and provide that an employer may not seek "additional information" beyond that included in the sample form. 29 C.F.R. § 825.306(b). Dr. Smith's letter of December 11, 1997 provided information on the commencement and duration of Albert's depression, and reported that Albert had been temporarily unable to work because of her condition. Dr. Smith also included her diagnosis of Albert's condition and a description of the progress of her symptoms. Even though the Service neither specified what additional information it needed, nor contacted Dr. Smith for clarification (pursuant to Albert's authorization), Dr. Smith submitted a second certification on February 3, 1998, this time on the form provided. Dr. Smith included a more detailed description of the medical facts relating to Albert's condition, and responded to each question to the extent she found it applicable to Albert's situation. The certifications indicate that Albert suffered from a mental condition that left her incapacitated for several months and has required ongoing treatment by Dr. Smith and other providers. This was sufficient information to establish that her leave was due to a serious health condition that made her unable to perform the functions of her position.

The Postal Service's criticisms of Dr. Smith's submissions may have stemmed from a misapprehension of its own role. At times, the Service writes as if it needs sufficient information to independently assess Albert's condition or to evaluate Dr. Smith's diagnosis. However, an employer is not entitled to require information beyond that allowed by 29 U.S.C. § 2613, in order to make its own assessment. *See* 29 C.F.R. § 825.306(b) ("[N]o additional information may be required."). Moreover, the limited information that the FMLA permits an employer to demand shows that the statute does not authorize an employer to make an independent assessment of the employee's medical condition. Instead, the employer should determine whether the provided information demonstrates that the diagnosed condition is a serious health condition within the meaning of the FMLA. Much of the information the Postal Service now indicates it anticipates Dr. Strasburger's examination to provide falls outside the bounds of permissible inquiry set by the FMLA. Notably, Dr. Strasburger criticizes Dr. Smith's submissions for failing to address the stressors that precipitated Albert's leave and the frequency and specifics of Albert's treatment and medication, along with other "components of a standard psychiatric examination." Strasburger Aff. ¶ 5. The Postal Service is not entitled to this information under the FMLA, and Dr. Smith's certification was not legally inadequate for failing to include it. *See Ellshoff v. Department of Interior,* 76 M.S.P.R. 54, 78 (although certification requirements of FMLA are "much less stringent" than agency's leave requirements, agency cannot deny FMLA leave based on alleged deficiencies in medical certification since certification satisfied the FMLA requirements).

In its letters directing Albert to undergo examination by Dr. Strasburger, the Service made no suggestion that Dr. Smith did not properly evaluate Albert, and provided no reason to doubt the validity of Dr. Smith's certification. Particularly in light of the fact that Dr. Smith is certified to perform EAP testing for the Postal Service, the Service needed a specific "reason to doubt the validity of [her] certification" in order to demand a second examination. 29 U.S.C. § 2613(c).

Although Albert's counsel repeatedly requested that the Service specify its objections to Dr. Smith's letters, it was only after litigation was initiated that the Service, through counsel, alleged that it had questions about the objectivity of Dr. Smith's certification. There is no basis for concluding either that this newly asserted claim was a motivating factor for the Service's order, or that this vague allegation provides "reason to doubt the validity" of Dr. Smith's certification. The charge of non-objectivity appears to stem from Dr. Smith's having accepted Albert's descriptions of her work environment

without investigation or consideration of alternate views, such as that of the Service. As indicated below, however, this charge does not seem weighty.

In providing that an employee's health care provider should furnish her medical certification, the FMLA does not contemplate an adversarial investigation into a patient's symptoms and complaints. As Dr. Strasburger acknowledges, such an inquiry would not be typical for a treating clinician. Strasburger Aff. ¶ 6 ("The purpose of a treating psychotherapist is generally treatment, not forensic evaluation."). While what constitutes a "reason to doubt the validity" of a medical certification is not well-established, it is difficult to conclude that the fact that a health care provider follows generally accepted treating practices provides such a reason. *Cf. Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711 (7th Cir.1997)(employer ordered second opinion to resolve conflict between certifications provided by employee's two physicians); *Patterson v. Department of Air Force*, 74 M.S.P.R. 648 (1997)(finding that the facts that employee's physician never "contacted [her] supervisor to evaluate [her] version of events, and that [the doctor's] letters put the agency in a difficult position because accepting that her medical conditions derived from the agency's 'maltreatment' would compromise its position in her equal employment opportunity complaints" did not justify agency's rejecting medical evidence).

*C. Postal Service Regulations*

The Postal Service next claims that its regulations permit it to order Albert to undergo a fitness-for-duty examination, and that the FMLA does not supersede these regulations. The FMLA does not guarantee an employee returning from leave any rights or benefits beyond those to which she would have been entitled had she not taken leave. 29 U.S.C. § 2614(a)(3)(B). Accordingly, the Postal Service maintains that it can require Albert to undergo a psychiatric examination before returning from medical leave because it could have done so if she had not taken leave.[5] That is, the FMLA is not violated because it only entitles an employee to be restored to an equivalent status, and Albert's status (administrative leave) is the same as that of any active duty employee who has been ordered to undergo a fitness-for-duty examination. The argument is unpersuasive.

The fact that the Postal Service *could* have ordered Albert to undergo a psychiatric examination absent her leave is not the determinative criterion. The proper determinative factor is whether an employer *would* have taken a given action absent an employee's FMLA leave. "An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment." 29 C.F.R. § 825.216(a). Just so, the Postal Service cannot order Albert to undergo a fitness-for-duty examination prior to her return from FMLA leave unless it can establish that it would have ordered such an examination if she had not taken leave. *Cf. Carrillo v. National Council of Churches of Christ in the U.S.*, 976 F.Supp. 254, 256 (S.D.N.Y.

5. Albert claims that the Service regulations do not permit a fitness-for-duty examination under the circumstances. She relies on Part 864.4 of the Employee and Labor Relations Manual (ELM), which provides that "[e]mployees returning to duty after 21 days or more of absence due to illness or serious injury require medical certification," and argues that this is the only provision applicable to employees returning from FMLA leave. The Postal Service in turn cites ELM Part 864.3 to establish that management may "order fitness-for-duty examinations at any time" to "determine whether an employee is able to perform the duties of the position" because of medical reasons.

The Postal Service exhibits a somewhat ambivalent stance on this issue. The Service questions Albert's ability to dispute the legitimacy of the examination under its regulations. It argues that an employee may challenge an order to submit to a fitness-for-duty examination only by bringing a complaint before the Merit Systems Protection Board under the Civil Service Reform Act. But at the same time, the Service reasons that its conduct was permissible because it conformed to agency regulations. The Postal Service cannot simultaneously rely on these regulations and expect to shield them from any substantive evaluation.

Nonetheless, because the FMLA precludes ordering a fitness-for-duty examination in this case regardless of its permissibility under Postal Service regulations, this question need not be resolved.

1997)(since it was undisputed that employee would have been fired absent medical leave, FMLA did not prevent termination).

In the case at hand, the Service has not shown or attempted to show that Albert would have been ordered to undergo a psychiatric examination had she not taken leave. Nowhere in the Service's extensive correspondence with Albert and her attorney did it claim its order had any basis unrelated to her FMLA leave. The Postal Service claimed an examination was necessary to determine if Albert was entitled to FMLA leave, and to evaluate whether she was fit to return from that leave. It is only once litigation began that the Postal Service suggested that Albert's "erratic behavior" prior to taking leave was a factor in its decision, and the record shows that the Service was not sufficiently concerned about this behavior to order a fitness-for-duty examination when it occurred.

The Service's "what's the difference?" reasoning vacillates between the claim that Albert could have been in the very same position had she never taken leave, and the suggestion that she could be in this position if she returns from leave and then is ordered to undergo a fitness-for-duty examination. The latter formulation suggests the possibility that employers in the Service's position might seek to avoid the impact of the FMLA by ordering employees to undergo examination immediately after reinstatement.

It is true that the FMLA does not prohibit an employer from requiring an employee who has returned to work to undergo a fitness-for-duty examination. However, the Postal Service must provide reasons for any such order, and may not circumvent the protections of the FMLA by basing an order on Albert's FMLA leave or the perceived inadequacy of Dr. Smith's submissions for agency purposes. The requirement that an employee be returned to duty without delay upon the employer's receipt of fitness-for-duty certification would be nullified if the fact that an employee had taken leave under the FMLA for a temporarily, but no longer, disabling condition could be a sufficient reason to question her ability to work. This is not to suggest that an employer can never order a newly returned employee to undergo examination, but only that where, as here, an employee presents a medical certification that is adequate under the FMLA, and the employer has no present reason to doubt the employee's fitness for duty, the employer cannot rely on the employee's FMLA leave (or her prior medical condition) to justify such an examination.

■ In sum, the Postal Service may order a fitness-for-duty examination upon Albert's return only if her post-reinstatement behavior provides a reason for doing so. Since it appears that the "erratic behavior" Albert allegedly engaged in prior to her leave was related to her depression and the medication she was taking, the Service may not rely on that behavior as reason for an examination at this time. This approach is consistent with that taken by the Merit Systems Protection Board (MSPB) in *Harris v. Department of the Air Force,* 62 M.S.P.R. 524 (1994). There, the agency considered only the employee's "behavior or actions between the time that she returned to duty ... and the time she was ordered to submit to a psychiatric examination" in holding that the order was unjustified and therefore invalid. 62 M.S.P.R. at 528.

The MSPB has also recognized that an agency may not base employment actions on conduct that satisfies the conditions of the FMLA but not the agency's more-restrictive standards. In *Gross v. Department of Justice,* 77 M.S.P.R. 83 (1997), the Board explained that "an agency may not apply a more restrictive leave policy than that provided under the FMLA, and it may not deny an employee leave under the FMLA for failure to follow the agency's leave procedures." 77 M.S.P.R. at 87 (overturning an agency's suspension of employee for failure to comply with agency's leave-request policy). *Cf. George v. Associated Stationers,* 932 F.Supp. 1012 (N.D.Ohio 1996)(FMLA leave may not be considered as basis for employment action even if company acts pursuant to uniformly applied policy). Similarly, because Dr. Smith's submissions comport with the FMLA standards, the Postal Service may not order Albert to undergo a psychological examina-

tion because it deems those submissions insufficient to satisfy its own agency standards. *See Ellshoff v. Department of the Interior,* 76 M.S.P.R. 54 (1997)(agency could not deny employee FMLA leave since her medical certification satisfied the FMLA requirements even though it did not satisfy the more stringent requirements of the agency's leave policy).

The suggestion that the Postal Service's own regulations could impose further conditions on an employee's exercise of rights under the FMLA is unpersuasive in light of the FMLA's provision that "[i]t shall be unlawful for any employer to interfere with [or] restrain the exercise of" rights provided by the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA suggests an employer may impose additional conditions, beyond those specified in the FMLA itself, on an employee's return to work only in certain limited circumstances which do not apply here. 29 U.S.C. § 2614(a)(4) ("[N]othing in this paragraph shall supersede a valid State or local law or a collective bargaining agreement that governs the return to work of such employees.") Since Albert's relationship with the Postal Service is governed neither by a collective bargaining agreement, nor by state or local law, the FMLA regulations do indeed supersede the agency's standards.

*D. The Rehabilitation Act and the ADA*

The Postal Service turns finally to the Rehabilitation Act and the ADA in its attempt to justify its conduct. The Service maintains that these statutes allow employers to require examinations that are "job-related" and "consistent with business necessity," 42 U.S.C. § 12112(d)(4), and argues that the proposed examination satisfies these conditions. The defendant claims a fitness-for-duty examination is needed because Dr. Smith's certifications do not adequately allay its concerns about Albert's ability to perform the essential functions of her position in the face of the "erratic behavior" she allegedly exhibited prior to taking leave. The Postal Service contends that the FMLA should be read to allow pre-reinstatement medical examinations, such as this one, that are consistent with the ADA.

Albert argues that the ADA is inapplicable because she is not disabled, and is not pursuing any claim under the ADA. The Service responds that the ADA provisions regarding medical examinations and inquiries are applicable to all employees, and cites several cases which hold that employers may require employees who have not sought accommodations to undergo job-related medical examinations without violating the ADA. *E.g., Yin v. California,* 95 F.3d 864 (9th Cir.1996)(ADA does not preclude examination of employee whose health problems "have had a substantial and injurious impact on [her] job performance"); *Deckert v. City of Ulysses, Kan.,* 1995 WL 580074, *6–7 (D.Kan. Sept.6, 1995)(ADA not violated by requiring police officer who has suddenly begun to perform poorly to undergo examination). Albert argues that these cases are distinguishable because they involve claims under the ADA. But this distinction is inconsequential—the only ADA claim in these cases is the claim that the ADA prohibits the challenged medical examinations, and the legitimacy of an examination under the "business necessity" standard of the ADA does not depend on whether the employee challenges the examination.

Nonetheless, that the ADA does not preclude employers from requiring employees who suffer performance problems that may be health related to undergo medical examinations does not mean that the FMLA permits all such examinations. The ADA does not confer upon employers an affirmative right to conduct job-related examinations, but merely exempts such examinations from its prohibitions. 42 U.S.C. § 12112(d)(4)(A)("A covered entity *shall not* require a medical examination ... *unless* such examination ... is shown to be job-related and consistent with business necessity.")(emphasis added). *Compare* 42 U.S.C. § 12112(d)(4)(B) ("A covered entity *may make inquiries* into the ability of an employee to perform job-related functions.")(emphasis added). There is, of course, no logical reason that an examination which does not violate the ADA cannot violate the FMLA—indeed, it would not be surprising to find that

the prohibitions of these different statutes are not coextensive.[6]

The Postal Service cites one case in support of its theory that examinations permissible under the ADA are necessarily permissible under the FMLA. In *Porter v. United States Alumoweld Co.*, 125 F.3d 243 (4th Cir.1997), a machine operator who was fired for refusing to undergo a functional capacities examination after he suffered several periods of incapacity following a series of back injuries claimed that his termination violated both the ADA and the FMLA. The court held that the ADA did not *prohibit* the required examination because the EEOC had explained that a medical examination following an "on-the-job injury which appears to affect [an employee's] ability to do essential job functions" is job-related. 125 F.3d at 246 (citation omitted).

The court then held that the employee could not establish that the examination violated the FMLA by showing that it sought more than the fitness-for-duty certification the FMLA allows an employer to require from a returning employee. The *Porter* court pointed out that "the FMLA certification is a health verification distinct from the ADA-prescribed exam." 125 F.3d at 247. There is no indication that Porter was returning from an FMLA leave, or in any way entitled to the FMLA's protections. It appears that he was arguing that the FMLA prohibits employers from requiring any and all physical examinations since all exceed the bounds of the FMLA certification requirements. As the court explained, "[u]nder Porter's reading of the FMLA, that Act would be violated every time an employer requested a fitness for duty exam under the ADA, a request which requires the disclosure of more medical information than would be available from the FMLA's 'simple statement of an employee's ability to return to work.'"

Albert's argument is not nearly so broad and is more convincing. She claims that the appropriate way to reconcile the statutes is to recognize that an employee's return from FMLA leave does not in and of itself provide a sufficient business justification to satisfy the ADA standards. Albert maintains that "the business needs of the employer under the ADA are sufficiently met by the provision of a fitness-for-duty certification by the employee pursuant to the FMLA." If it were otherwise, that is, if an employer could justify a fitness-for-duty examination by alleging that a certification adequate under the FMLA was nonetheless insufficient for its business needs, the FMLA's prohibition on requiring any "additional information" beyond "a simple statement of an employee's ability to return to work" would be nullified. *See* 29 C.F.R. § 825.310(c). In effect, the FMLA answers in the negative the question whether an employee's FMLA leave can itself provide a job-related need for a fitness-for-duty examination where the employer has no present reason to doubt the employee's ability to work.

This can perhaps be seen more clearly by examining what it would mean to accept the Service's claim. The Service's purported business justification for requiring the examination goes something like this: the erratic behavior Albert exhibited prior to her leave created a legitimate, job-related reason for concern, and the documentation she has submitted is inadequate to alleviate that concern or to allow us to evaluate her contention that she is fit to return to work. The most basic problem with this argument is that it depends on the alleged inadequacy of a certification sufficient for the FMLA purposes for which it was offered. This alleged justification amounts to a claim that even though an employee's FMLA certification does not indicate any continuing incapacity, and even though there is no present reason to doubt her abilities, the employer's need to determine whether the employee has recovered sufficiently to perform her job functions provides an adequate business reason for a fitness-for-duty examination. Such a "need" could be asserted in the case of *any* employee returning from FMLA leave. This reading would negate the provisions of 29 U.S.C.

6. It would be far more surprising if the juxtaposition of these statutes (each of which seeks to safeguard employees' rights in different ways) were to deprive employees of a right so explicitly granted in the FMLA—the right to be reinstated upon submitting "a simple statement" of fitness to return.

§ 2614(a)(4) and 29 C.F.R. § 825.310 requiring an employer to reinstate an employee upon receipt of her health care provider's certification that she is fit for duty, without demanding additional information, much less an examination. The FMLA makes it the health care provider's responsibility, rather than the employer's, to evaluate an employee's health condition to determine if she is sufficiently recovered to return to work. Accordingly, an employer cannot claim that its inability to independently assess the employee's health justifies requiring an examination.

Holding that an employer needs some reason beyond an employee's having taken FMLA leave to justify ordering a fitness-for-duty examination does not imply that there is never adequate reason to require a returning employee to undergo such an examination. Indeed, the FMLA contemplates that this may happen. 29 C.F.R. § 825.310(b)("[R]equirements under the [ADA] that any return-to-work physical be job-related and consistent with business necessity apply .") The Postal Service argues that this provision can only be read to mean that examinations permitted under the ADA are necessarily permitted under the FMLA as well.

However, this is neither the only available reading nor the most plausible. Instead, the dividing line suggested by the FMLA, and by common sense, is the existence of some business need for an examination independent of the employee's having taken FMLA leave. The FMLA regulations provide examples of situations in which returning employees may and may not be required to submit to medical examinations:

> [A]n attorney could not be required to submit to a medical examination ... just because her leg had been amputated. The essential functions of [her] job do not require use of both legs; therefore such an inquiry would not be job related. An employer may require a warehouse laborer, whose back impairment affects the ability to lift, to be examined by an orthopedist ...

29 C.F.R. § 825.310(b). These examples suggest that an employer may have sufficient business justification to require an employee returning from FMLA leave to undergo examination only if she suffers from a continuing disability that the employer has reason to believe might affect her job performance. This reading is supported by the fact that the permissible examination is of a laborer whose present condition "*affects*" the ability to lift.

Moreover, this seems the most sensible way to reconcile the concerns of the ADA and the FMLA. Rather than concluding that the FMLA precludes all examinations permitted by the ADA, as Porter argued and the *Porter* court rightfully rejected, or that any examination permitted under the ADA is permissible under the FMLA, as the Postal Service urges, a more moderate approach is appropriate. The ADA and the FMLA do not conflict if the ADA's business necessity requirement requires more than an employee's having taken FMLA leave. In sum, an employer may not order an employee returning from FMLA leave to submit to a fitness-for-duty examination because of that leave, or because of an underlying condition that the employee's health care provider has certified will not interfere with the employee's ability to work, or because the employer views the certification as inadequate for its own purposes. An employer only has a sufficient "business need" to examine a returning employee where the employee's ongoing limitations may interfere with her ability to work.

## V.

The Postal Service violated Albert's right to restoration under the FMLA by failing to reinstate her once it received a certification from her treating psychologist that she was fit to return to work. While Albert is entitled to return to work without having to submit to a psychological examination, she is not entitled to the full scope of relief she has requested. The FMLA cannot support a permanent injunction preventing the Postal Service from ever conditioning her employment on such an examination. Once Albert returns to work, the Service may order her to undergo a fitness-for-duty examination if it has sufficient reason under the ADA/Rehabilitation Act and its own agency regulations.

As explained above, I am prepared to issue a final judgment to this effect unless the Postal Service can demonstrate that it has a

good faith basis for believing further discovery might be relevant as to Albert's eligibility for the protections of the FMLA. The Court will arrange to discuss this issue with counsel.