Barbara GUNERATNE

v.

ST. MARY'S HOSPITAL.

No. G–95–676.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 1, 1996.

Anthony P Griffin, Galveston, TX, for Barbara Guneratne.

A Martin Wickliff, Jr., Laura A Sapsowitz, Wickliff & Hall, Houston, TX, for St. Mary's Hospital.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

In this action, Plaintiff Barbara Guneratne claims that she was subject to unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 12101–12117 and 12201–12213 (also known as the Americans with Disabilities Act of 1990, the "ADA") and in violation of the Rehabilitation Act of 1973. Plaintiff also claims that she was subject to retaliation in violation of the Texas Worker's Compensation Act for filing a worker's compensation claim. Plaintiff seeks to recover compensatory and punitive damages. Now before the Court is the Defendants' Motion for Summary Judgment, dated September 27, 1996, and Plaintiff's Motion for Summary Judgment, dated October 10, 1996. For the reasons set forth below, the Defendant's Motion for Summary Judgment is hereby **GRANTED,** and the Plaintiff's Motion for Summary Judgment is hereby **DENIED.**

### I. FACTUAL BACKGROUND

Plaintiff is a registered nurse who began working for St. Mary's Hospital in 1989. She held several different positions during her tenure at the hospital. While working as a clinical relief nurse, on August 15, 1993, Plaintiff claims that she injured her back while attempting to lift a patient.

Plaintiff sought medical treatment for her injuries and did not attempt to return to work at the hospital until June, 1994. At that time Plaintiff submitted to St. Mary's a release with restrictions from her physician, Dr. J. Pat Kearney. In that release, Dr. Kearney specified that Guneratne's activity was restricted to "no lifting or bending greater than 5 lbs." Defendant's Ex. A, p. 103, lines 20–23. A second release by Dr. Kearney, submitted on July 27, 1994, stated that Guneratne should "avoid heavy lifting." Defendant's Ex. A, p. 120, lines 11–23. Plaintiff did not return to work at St. Mary's following her alleged injury. Nor did she submit any other releases to the hospital other than the two obtained from Dr. Kearney.

Plaintiff was advised by the hospital that its Return to Work Policy required that she present a physician's release to full duties with no restrictions. To determine whether a release was sufficient to enable an employee to return to work, the Policy further required that any restrictions noted on the release had to be measured against the ADA physical requirements for the employee's job. That is, Plaintiff had to be able to perform the essential functions of her job as a clinical relief nurse with or without accommodation in order to return to work.

The ADA physical requirements for the job of a clinical nurse included the activity of lifting or carrying weight up to 40 lbs. 61–100% of the time, and over 40 lbs. 31–60% of the time. For example, nurses at St. Mary's were often required to lift and/or move patients in order to "turn" patients, assist them to walk, lift patients in and out of wheelchairs, help them to bathe, etc., or to lift and/or move weighty equipment or furniture to assist in patient comfort. Many of these demanding lifting tasks are necessary in emergency situations in which the nurse must react quickly.

St. Mary's argues that because the two releases submitted by Dr. Kearney did not allow Plaintiff to engage in this essential function of lifting, Plaintiff was not able to return to work. Plaintiff argues, on the other hand, that St. Mary's had a policy of not allowing any employee who has an injury or disability to return to work unless there had been a 100% release, which is a per se violation of the ADA.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56.

Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. THE ADA CLAIMS [1]

■ To establish a *prima facie* case of employment discrimination under the ADA, the Plaintiff must show that she:

(1) was "disabled" as that term is defined by the ADA,

(2) is qualified, with or without accommodation, for the position sought,

(3) was subject to adverse employment action, and

(4) was replaced by a non-disabled person or was treated less favorably than non-disabled employees.

*E.E.O.C. v. Texas Bus Lines*, 923 F.Supp. 965, 969 (S.D.Tex.1996), *citing Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d. 253, 254 (5th Cir.1990); *EEOC v. Brown & Root, Inc.*, 688 F.2d 338, 340–41 (5th Cir. 1982).

■ Assuming, *arguendo*, that Guneratne is able to establish that she has a "disability" as defined by the ADA,[2] she cannot establish

---

1. Plaintiff's claims under the Rehabilitation Act are subject to the same standards as her ADA claims. *See* Rehabilitation Act Amendments of 1992, Public Law No. 102–569, § 506, 106 Stat. 4344, 4428 (1992) (codified at 29 U.S.C. § 794(d)) ("the standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under

Title I of the Americans with Disabilities Act of 1990").

2. Pursuant to the ADA, an individual is considered to have a disability if that individual either has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," or has "a record of

a *prima facie* case of discrimination under the ADA because she cannot show that she is a "qualified individual." In determining whether a plaintiff is a "qualified individual" with a disability, the Court must first determine whether the plaintiff can perform the essential functions of the job she holds. *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *see also Daugherty v. City of El Paso,* 56 F.3d 695, 696 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996). If the Court concludes that the plaintiff is not able to perform the essential functions of the job, the Court must then determine whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions. *Chandler,* 2 F.3d at 1394–94. If no reasonable accommodation would enable the plaintiff to perform the essential functions of her position, then she is not a "qualified individual" with a disability and is not subject to the protection afforded by the ADA. *Tyndall v. National Education Centers, Inc.,* 31 F.3d 209, 212–13 (4th Cir.1994).

■ "Essential functions" are those functions that bear more than a marginal relationship to the job at issue. *Chandler,* 2 F.3d at 1393. Physical criteria, such as the ability to lift heavy loads, must be necessary and substantially related to a person's ability to perform the essential functions of the job. Evidence of whether a particular function is essential includes, but is not limited to: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience or past incumbents on the job; and/or (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3) (1995).

■ The Court concludes that the Plaintiff in this case is unable to perform the essential functions of her job as a clinical nurse at St.

Mary's Hospital. The hospital had a written job description for the job of Clinical Nurse, in which the category "Working Conditions and Physical Requirements" referred the reader to the "ADA Survey of Physical Requirements" for the job of Clinical Nurse. The ADA Survey of Physical Requirements for the job of Clinical Nurse required, among other things, that the nurse be physically able to lift or carry weight up to 40 lbs 61–100% of the time, and over 40 lbs. 31–60% of the time. These physical requirements are an essential function of the job because nurses must be prepared to immediately react in emergency situations, which Plaintiff herself suggests occur "possibly once a week or once every four or five days" on the unit where she worked. *See* Defendant's Ex. A, p. 82, lines 14–19. Furthermore, nurses are also involved in physically demanding lifting tasks including turning patients, helping them walk, lifting patients in and out of wheelchairs, and helping them bathe. *Guneratne herself* admits that only thirty to forty-five minutes of an average eight to twelve hour shift are spent doing something other than physical activity. *See* Defendant's Ex. A., p. 82, lines 1–13. Thus, the Plaintiff's own description of the job of clinical nurse makes it clear to this Court that physically demanding duties are an essential function of that position. Although these tasks may not be essential to the work performed by a trained registered nurse, the summary judgment record is clear that these tasks were performed by the clinical nurses at St. Mary's and were an integral part of patient care.

■ As the Court has concluded that the Plaintiff is unable to perform the essential functions of her job, the Court now turns to the question of whether any reasonable accommodation by the employer would enable the Plaintiff to perform those essential functions. *Chandler,* 2 F.3d at 1393–94. However, the ADA does not require an employer to eliminate or reallocate essential functions of a position in order to provide accommodation. *Bradley v. University of Texas M.D. Anderson Cancer Center,* 3 F.3d 922, 925 (5th Cir.1993), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994); *see*

such impairment," or is "regarded as having     such an impairment." 42 U.S.C. § 12102(2).

*also* 29 C.F.R. § 1630.2(*o*) (1995). "Such redefinition exceeds reasonable accommodation." *Bradley*, 3 F.3d at 925.

█ The Plaintiff has suggested that, as an accommodation, she should have been allowed to avoid heavy lifting and/or permitted to request assistance in situations where heavy lifting was required. Such an accommodation would eliminate or reallocate an essential function of Guneratne's job, which the ADA does not require. *Bradley*, 3 F.3d at 925. Additionally, such an accommodation could pose a risk to the health and welfare of St. Mary's patients in the event of an emergency situation which would require immediate action. *Daugherty*, 56 F.3d at 698 (holding that an individual is not qualified for a job if there is a genuine substantial risk that she could be injured or could injure others and the employer cannot modify the job to eliminate that risk); *see also* 29 C.F.R. § 1630.2(r).

Therefore, the Court concludes that Guneratne cannot perform the physical duties of nursing care which are an essential function of the position of a clinical nurse. There is no accommodation that St. Mary's Hospital could have made that would enable her to perform those duties. As Plaintiff has failed to state a *prima facie* case pursuant to the ADA, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED** as to the ADA and Rehabilitation Act claims. Accordingly, Plaintiff's ADA and Rehabilitation Act claims are **DISMISSED WITH PREJUDICE.**

## IV. THE WORKER'S COMPENSATION RETALIATION CLAIMS

█ The Texas Labor Code provides that a person may not discharge or in any other manner discriminate against an employee because the employee has in good faith filed a worker's compensation claim. Tex.Lab.Code Ann. § 451.001 (Vernon Supp. 1995). To establish a claim under this statute, the plaintiff has the burden of establishing a causal nexus between her filing of a worker's compensation claim and any ad-

verse action by her employer. *Parham v. Carrier Corporation,* 9 F.3d 383, 386 (5th Cir.1993). "The plaintiff need not prove that his quest for worker's compensation was the sole reason for [any adverse action], but he must establish that it was a determining factor." *Id.*

█ The Plaintiff has failed to show a causal nexus between her filing of a worker's compensation claim and the hospital's decision to not allow her to return to work. Guneratne has offered no evidence to substantiate her claim that her filing of a worker's compensation claim was a factor, let alone a determining factor with respect to any of the hospital's actions. In fact, the Court has already concluded that the overwhelming evidence supports the fact that the Plaintiff was not able to return to work because she was physically unable to perform the essential functions of her job. *See Parham,* 9 F.3d at 388–89 (finding that plaintiff had failed to establish a causal nexus where the objective evidence showed that the reason the plaintiff did not return to work was that he was not physically able to perform his job). Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment as to the Texas Workers' Compensation Act retaliatory discharge claims,[3] and those claims are hereby **DISMISSED WITH PREJUDICE.**

## V. CONCLUSION

For the reasons stated above, this Court **GRANTS** the Defendant's Motion for Summary Judgment as to all claims, and **DENIES** the Plaintiff's Motion for Summary Judgment as to all claims. Furthermore, Defendant's request for costs to be assessed against the Plaintiff is hereby **DENIED.** All parties are to bear their own costs incurred herein to date.

IT IS SO ORDERED.

DONE this 31st day of October, 1996, at Galveston, Texas.

---

**3.** Plaintiff's Motion for Summary Judgment is silent as to the Texas Workers' Compensation Act retaliatory discharge claims; however, to the ex-

tent that Plaintiff has made a Motion for Summary Judgment as to those claims, that Motion is hereby **DENIED.**