**Larry KETCHER, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**No. Civ.A. G–99–374.**

United States District Court, S.D. Texas, Galveston Division.

Nov. 29, 2000.

Ted C. Litton, Royston Rayzor Vickery and Williams, Houston, TX, for Ted C. Litton, mediator.

Lloyd Earl Kelley, Lloyd E. Kelly & Assoc, Houston, TX, for Larry Ketcher, plaintiff.

Alan N Magenheim, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, Houston, TX, for Wal–Mart Stores Inc, defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

KENT, District Judge.

Plaintiff Larry Ketcher brings this action against his former employer, Wal–Mart Stores, Inc. ("Wal–Mart"), alleging discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, et seq. ("ADA") and the Texas Labor Code § 21.001 et seq. Now before the Court is Defendant's Motion for Summary Judgment, filed August 29, 2000 and Plaintiff's "Motion for Leave to File an Amended Complaint," filed October 10, 2000. For the reasons stated below, Defendant's Motion for Summary Judgment

is **GRANTED** and Plaintiff's Motion for Leave to File an Amended Complaint is **DENIED.**

## I. FACTUAL SUMMARY

Plaintiff began working for Wal–Mart on February 27, 1995 at Wal–Mart's distribution center number 6036 in Palestine, Texas. Initially, Plaintiff worked for three months as an "order filler." After this, Plaintiff began working as a "replenishment driver." This job required Plaintiff to operate a "stock picker" forklift. The stock picker is a piece of heavy machinery, weighing some 7,600 pounds, that enables a worker to remove product from pallets that are housed on racks reaching as high as twenty-six feet above a warehouse floor. A "replenishment driver," like Plaintiff, must raise himself up on the "stock picker" lift and remove product from the racked pallets of merchandise. The requisite quantity of product is stacked on the lift by the "replenishment driver," who then lowers the lift, drives the product to a designated location and unloads the retrieved items. Despite suffering from complete hearing loss in his left ear and from a seventy-percent loss of hearing capacity in his right ear, Plaintiff successfully performed his job without incident from May or June of 1995 until the autumn of 1997. In September 1997, however, Plaintiff became afflicted with some nature of anxiety disorder and began taking medication to control this condition. Contemporaneously, Plaintiff took a medical leave of absence beginning on September 12, 1997 and ending October 7, 1997. Plaintiff returned to work October 10, 1997. Wal–Mart argues that on October 10, Plaintiff informed one or more of its employees that he was suffering from dizzy spells and felt concerned about his ability to operate heavy machinery. Plaintiff contends that he informed Wal–Mart of his dizzy spells prior to his leave of absence and that these spells had dissipated by his return to work on October 10.[1] In light of its knowledge

---

1. Plaintiff's dizziness apparently stems from a condition known as tinnitus, a medical condi-

of Plaintiff's dizzy spells, whenever obtained, Wal–Mart requested that Plaintiff obtain a full medical release from his doctor, stating what types of tasks Plaintiff could and could not perform. Wal–Mart thus sent Plaintiff home prior to the normal end of Plaintiff's shift with instructions to obtain a doctor's release or restrictions before he could resume work. Thereafter, Plaintiff delivered to Wal–Mart a letter from his physician. This letter stated, in part that:

> Larry [Ketcher] has been having difficulty with tinnitus for many years but over the last month or two has had associated dizziness. The dizziness is to an extent that it does put him at risk of endangerment of himself and others at work at this time.... I feel that Larry is at least partially disabled and has been over the last month dating back to 9/12/97 and until he is further controlled in terms of his mediation [sic] as well as his dizziness he should be placed on partial disability, at least to the point where he is not at his regular job that would put him at risk for endangerment. A desk job would be appropriate or other type [of] duty that would not require lifting heavy objects, climbing ladders, working with heights, or working with any type of machinery.

Plaintiff never produced a letter releasing him from these restrictions and has never again worked for Defendant.

On May 26, 1999, Plaintiff filed suit in the 212th District Court of Galveston County, Texas. Plaintiff asserted causes of action under the Americans With Disabilities Act, 42 U.S.C. § 12111, et seq. ("ADA") and the Texas Labor Code § 21.001 et seq. stemming from Wal–Mart's alleged violations of these statutes that were perpetrated against Plaintiff while in Wal–Mart's employ. Thereafter, Wal–Mart answered in state court, and then timely filed its notice of removal with this Court on June 25, 1999 asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441. Now before the Court is Defendant's Motion for Summary Judgment, in which Wal–Mart argues that Plaintiff cannot recover as a matter of law, in that Plaintiff is not a "qualified employee" who can recover under either the ADA or Texas law. In response, Plaintiff contends that: (1) he is a qualified employee; and (2) material fact issues exist regarding a newly alleged failure of Defendant to rehire Plaintiff at other Wal–Mart locations for another job position. With regard to Plaintiff's second argument, the Court, as discussed below, treats this as a Motion for Leave to Amend Complaint and such leave is **DENIED**. Defendant's Motion for Summary Judgment, however, is **GRANTED**.

## II. ANALYSIS

### A. *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See*

tion that causes a continuous ringing in one's ear or ears.

*id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

## B. *ADA Claim*

■ Defendant moves for summary judgment on Plaintiff's ADA claim. Title I of the ADA prohibits an employer from discriminating against "a *qualified individual* with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis added); *see also Daugherty v. City of El Paso,* 56 F.3d 695, 696 (5th Cir.1995); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725 (5th Cir.1995). In order to prevail upon an ADA claim, a plaintiff must prove that "(1) he has a 'disability;' (2) he is a 'qualified individual' for the job in question; and (3) an adverse employment decision was made because of his disability." *Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir.1999) (citing 42 U.S.C. § 12112(a)). Defendant has moved for summary judgment solely on the basis that Plaintiff cannot, as a matter of law, establish that he was a "qualified individual" as required by the second prong of this test. The Court, therefore, turns immediately to that issue.[2]

■ In order to show that he is a "qualified individual," Plaintiff must demonstrate that "with or without reasonable accommodation, [he] can perform the essential functions of the employment position that [he] holds or desires." 42 U.S.C. § 12111(8). In other words, an "otherwise qualified person" must be " 'able to meet all of the [position's] requirements in spite of his handicap.' " *Burch,* 174 F.3d at 619. Plaintiff may prove that he is "otherwise qualified" by introducing some evidence that he could either: (1) perform the essential elements of the job of "replenishment driver" despite his disability; or (2) perform the essential function with a reasonable accommodation of his disability. *See id.* Essential functions are those functions that bear more than a marginal relationship to a plaintiff's job. *See Washington v. Occidental Chem. Corp.,* 24 F.Supp.2d 713, 728 (S.D.Tex.1998). Sever-

---

2. It is worthy of note that the Court has only assumed, without deciding, that Plaintiff has a disability and that a causal link might potentially exist between such disability and any alleged adverse employment action by taken by Defendant. The Court rests its decision solely upon the Plaintiff's inability to provide evidence that could sustain the second element of the prima facie ADA case at trial.

al items bear upon whether or not a particular function is essential, including, but not limited to: (1) the employer's judgment regarding which functions are essential; (2) written job descriptions prepared in advance; (3) the amount of time spent on the job performing the function; (4) the consequences of allowing the employee to not perform the function; (5) the terms of a collective bargaining agreement; (6) past work experience of those holding the same position; and (7) the present work experience of those holding similar positions. *See id.* (citing 29 C.F.R. § 1630.2(n)(3)). Moreover, "[p]hysical criteria, such as the ability to operate machinery, must be necessary and substantially related to a person's ability to perform the essential functions of the job." *Id.*

It is undisputed that the job of "replenishment driver" entails several essential functions. At a minimum, Plaintiff must be able to operate a forklift, lift heavy items, and work at heights. Perhaps most crucially, Defendant's summary judgment evidence conclusively establishes that Plaintiff spent eighty percent of his time operating heavy machinery. Plaintiff makes no effort to dispute Defendant's evidence, but instead attempts to recharacterize Plaintiff's job more generally as a "laborer" with its essential function being only the ability to "fill orders." However, Plaintiff fails to enumerate what functions are essential to this hypothesized job of "laborer." As Defendant's summary judgment evidence on "essential functions" has not been controverted in any manner by Plaintiff, the Court must accept Defendant's characterization of these essential functions.

The crux of this dispute thus centers upon whether or not Plaintiff could perform the essential functions of his job, namely to operate a forklift, lift heavy objects and work at heights. Defendant's arguments as to why Plaintiff's dizziness rendered him not otherwise qualified to perform the essential functions of his job are interrelated and turn fundamentally upon Plaintiff's ability to safely perform his essential workplace tasks. If Plaintiff could perform these essential functions either despite his dizziness or with a reasonable accommodation, Plaintiff is otherwise qualified for the job of "replenishment driver." *See Burch,* 174 F.3d at 619; *Guneratne v. St. Mary's Hosp.,* 943 F.Supp. 771, 774 (S.D.Tex.1996). The Court first addresses whether or not Plaintiff could perform the essential functions of his job. If the Court concludes that Plaintiff could not perform the essential functions of the job, "the Court must then determine whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions." *Guneratne,* 943 F.Supp. at 774. Defendant argues that because of Plaintiff's dizziness, he became unable to continue performing the essential functions of his job. As evidence, Defendant offers a letter from Plaintiff's personal physician that restricted Plaintiff's performance to those duties "that would not require lifting heavy objects, climbing ladders, working with heights, or working with any type of machinery." Plaintiff disagrees with his doctor's assessment but offers no evidence that he could, during the relevant time frame, in fact perform these functions that his doctor deemed unperformable. Instead, Plaintiff asserts that because he performed his job without incident or accident for several years he must be qualified to hold the position.[3] However, Plaintiff's

---

3. Plaintiff relies upon *Rizzo v. Children's World Learning Centers, Inc.* to support his proposition that an employer cannot terminate an allegedly unsafe deaf employee who has performed at work without incident. *See Rizzo v. Children's World Learning Ctrs., Inc.,* 173 F.3d 254, 260–61 (5th Cir.1999) *aff'd on reh'g,* 213 F.3d 209 (5th Cir.2000) *cert. denied,* ─── U.S. ───, 121 S.Ct. 382, 148 L.Ed.2d 294 (2000). Contrary to Plaintiff's argument, however, the *Rizzo* court did not preclude any such finding of dangerousness, but rather simply held that the employer in that case had not met its burden to prove such danger to the trial jury. *See id.* at 261. The present case differs markedly from *Rizzo.*

dizziness only began in the last months of his employment, and during much of this time, Plaintiff was absent from work on medical leave. If this Court possessed the power of omniscience, perhaps it could ascertain whether or not Plaintiff could in fact have performed the essential functions of a job that his own physician states he was incapable of performing. The Court, of course, has no such power and must instead rely upon the evidence presented by the parties in order to exercise its judgment. Unfortunately, Plaintiff has failed to provide any relevant evidence to dispute or contradict Defendant's proffered evidence that Plaintiff could not safely perform the job. Plaintiff simply must introduce sufficient evidence to avoid summary judgment on this issue, and he has not. *See Burch,* 174 F.3d at 619; *Washington,* 24 F.Supp.2d at 728. The Court therefore holds that Plaintiff could not perform the essential functions of his position.[4]

■ Thus, the Court turns to the question of whether any reasonable accommodation by the Defendant would have enabled the Plaintiff to perform the essential functions of his job. The ADA defines "reasonable accommodation" as including:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modi-

fied work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9); *Burch,* 174 F.3d at 620.

In this case only the job restructuring option or a reassignment of Plaintiff to a vacant position seem remotely tenable as reasonable accommodations. The Court first addresses the possibility of accommodating Plaintiff as a "replenishment driver."

■ In its consideration of whether Defendant need have accommodated Plaintiff in his existing job, the Court is mindful of the fact that "the ADA does not require an employer to eliminate or reallocate essential functions" of Plaintiff's job. *See Guneratne,* 943 F.Supp. at 774. However, the doctor's letter provided by Plaintiff's physician eviscerates the possibility of Defendant allowing Plaintiff to engage in seemingly all of his currently required essential job functions. Moreover, despite having the burden to do so, Plaintiff has offered no evidence of how Defendant could have accommodated him by modifying his existing job as a "replenishment driver." Further, having itself considered

Here the Defendant has introduced substantial non-refuted evidence that Plaintiff was a danger to himself and others. Moreover, it is abundantly clear to the Court that the actions taken by Defendant were not taken because of a hearing impairment manifested as a hearing problem as in *Rizzo,* but rather because Plaintiff began suffering from dizziness of whatever origin.

4. The *Rizzo* case also addressed whether the employer or the employee bears the burden of proof on the safety issue. *See id.* at 259. According to the *Rizzo* court, the defendant bears the burden of proof "only in cases concerning 'safety requirements that screen out or tend to screen out [the disabled].' " *Id.* (quoting *Rizzo v. Children's World Learning Ctrs., Inc.,* 84 F.3d 758, 764 (5th Cir.1996)).

In the present case, as noted above, the Defendant's safety concern involved Plaintiff's dizziness rather than Plaintiff's hearing impairment *ipso facto.* Seemingly, this concern would not invoke the burden shifting exception set forth in *Rizzo.* Plaintiff, moreover, has not even argued that Defendant employed any safety requirement that tended to screen out disabled persons. Thus, the Court has treated this issue as one on which the Plaintiff bears the burden of proof. However, even if Plaintiff could demonstrate that Defendant should bear this burden, the Court would nevertheless grant Defendant's Motion for Summary Judgment as no reasonable jury could determine that Plaintiff was a "qualified individual" with a disability in light of the overwhelming evidence to the contrary.

the possibility, the Court also cannot see how Defendant could have reasonably accommodated this particular Plaintiff to perform in his job. The issue here is not Plaintiff's innate physical or mental capacity to do the job (he had been doing the job for more than two years), but rather his ability to perform the essential functions of the position without potentially endangering himself or others. *See Burch,* 174 F.3d at 621 (holding that the ADA does not require an employer to potentially endanger co-workers in an effort to accommodate a disabled employee). For Defendant to have accommodated Plaintiff, it would have had to "eliminate the essential functions of" driving a forklift, lifting heavy objects and working at heights. The ADA does not require an employer to assign others to perform essential functions that an employee cannot safely perform. *See Bradley v. Univ. of Texas M.D. Anderson Cancer Ctr.,* 3 F.3d 922, 925 (5th Cir.1993). Only by totally redefining Plaintiff's job could Defendant have enabled him to continue working and such redefinition would "exceed reasonable accommodation." *Id.*

■ Of course, a Defendant cannot simply speculate about the dangers created by a handicapped employee. However, once a symptom of an employee's condition manifests itself in such a way that danger becomes foreseeable rather than merely speculative an employer must be permitted to act. *See id.* (holding that a hospital, which learned from a newspaper article of a surgical technician's HIV-positive status, could reassign the employee in light of risks attendant with surgery). In contemplation of this type of scenario, the regulations established by the Department of Labor provide that an employer "may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity ... [and] may make inquiries into the ability of an employee to perform job-related functions." 29 C.F.R. § 1630.14(c). The appendix to this rule provides further illu-

mination in stating that, "[t]his provision permits employers to make inquiries or require medical examinations (fitness for duty exams) when there is a need to determine whether an employee is *still able* to perform the essential functions of his or her job." Appendix, 29 C.F.R. § 1630.14(c) (emphasis added). Because Plaintiff, an operator of heavy machinery, had advised Defendant that he was suffering from dizziness, Defendant quite properly exercised its right, as contemplated by rule 1630.14(c), to request a physician's certification of what activities Plaintiff could and could not perform. *See Porter v. United States Alumoweld Co., Inc.,* 125 F.3d 243, 246 (4th Cir.1997). Defendant had no obligation to continue allowing Plaintiff to work as a "replenishment driver" without undertaking this relevant medical inquiry. *See id.* Plaintiff responded to Defendant's request by submitting a doctor's letter that in effect said that Plaintiff can not presently perform the essential functions of his job. Plaintiff has submitted no summary judgment evidence to controvert the doctor's conclusion. No reasonable accommodation would have allowed Plaintiff, as an operator of heavy machinery suffering from dizziness, to safely perform his job. *See Washington,* 24 F.Supp.2d at 728 (holding that because of stress related "psuedoseizures" a chemical operator was not qualified as a matter of law to operate heavy machinery). Thus, the Court holds that Plaintiff is not a "qualified individual" with a disability.

■ As Plaintiff could no longer perform his job with any imaginable restructuring until his condition dissipated, which would presumably have led a physician to clear him for work, the only theoretically possible accommodation would seem to have been a reassignment of Plaintiff to a different less safety-sensitive position with Wal–Mart. Plaintiff argues, citing 42 U.S.C. § 12111(9), that when job restructuring is not possible, an employer needs to ascertain whether or not any vacant jobs exist that Plaintiff could do either

with or without reasonable accommodation. Contrary to Plaintiff's contention, however, the law places the burden on the employee to notify the employer that he seeks a "reasonable accommodation" and to apprise the Court via summary judgment evidence that he has undertaken such efforts. *See Burch,* 174 F.3d at 621; *Washington,* 24 F.Supp.2d at 729 (holding that a plaintiff's claim failed as a matter of law when plaintiff offered no evidence of any request for a reasonable accommodation). In *Burch,* the plaintiff contended that the defendant knew he wanted to continue working in some capacity. *See Burch,* 174 F.3d at 621. Moreover, the *Burch* plaintiff argued that vacant positions, for which he was qualified, in fact existed at the time of his termination. *See id.* The Fifth Circuit, however, found a "sticking point" in the plaintiff's argument, in that the plaintiff offered no proof in support of these allegations. *Id.* An employee must ask his employer for a sought after accommodation, such as reassignment to a "particular position," and the employee must introduce at least some proof of this request in response to a motion for summary judgment. *Id.* Additionally, the employee must provide some evidence that he was in fact qualified for the particular sought after transfer position. *See id.* For purposes of the summary judgment now before this Court, Plaintiff "at all times had the responsibility of demonstrating that he was qualified for a position and that [Defendant] knew of his interest, and that he was denied the job because of a disability." *Id.* at 622–23. Plaintiff directs the Court to no summary judgment evidence that could aid in proving his prima facie case on this issue. The Court simply cannot speculate as to whether or not any such positions existed for which Plaintiff was otherwise qualified, and therefore the Court concludes that Plaintiff cannot establish that a transfer accommodation would have been reasonable or even possible in this case. In light of the Court's discussion, Defendant's Motion for Summary Judgment on Plaintiff's ADA claim is hereby **GRANT-** **ED,** and Plaintiff's claim is **DISMISSED WITH PREJUDICE.**

#### B. *Texas Labor Code. Claim*

The Court's disposition of Plaintiff's ADA claim likewise disposes of Plaintiff's state law cause of action under the Texas Labor Code § 21.001 et seq. Texas' statutory scheme provides that employers can only be held liable for discrimination "because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." Tex.Lab.Code Ann. § 21.105 (Vernon 1996). Thus, in discrimination cases under both the ADA and the Texas Labor Code, a plaintiff bears the burden of showing he is "otherwise qualified" or can "reasonably perform a job." *See Pena v. Houston Lighting & Power Co.* 978 F.Supp. 694, 697 (S.D.Tex.1997) *aff'd,* 154 F.3d 267 (5th Cir.1998). As under the ADA, a state law plaintiff can show this in either of two ways: (1) by proving that he can perform all essential job functions without modifications or accommodations, or (2) that some reasonable accommodation by the employer would enable him to perform the job. *See id.* (citing *Austin State Hosp. v. Kitchen,* 903 S.W.2d 83, 91 (Tex.App.—Austin 1995, no writ)). Therefore, because the Court concluded, in Section II.B. above, that Plaintiff cannot establish that he is an "otherwise qualified" individual with a disability under federal law, Plaintiff also cannot prove a cause of action under the Texas Labor Code. *See Cornyn v. Speiser, Krause, Madole, Mendelsohn & Jackson,* 966 S.W.2d 645, 648– 49 (Tex.App.—San Antonio 1998, pet. denied). Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's Texas Labor Code claim is hereby **GRANT-ED,** and Plaintiff's claim is **DISMISSED WITH PREJUDICE.**

#### C. *Motion for Leave to File an Amended Complaint*

 In his response to Defendant's Motion for Summary Judgment, Plaintiff

has now alleged facts and possibly set forth the legal elements of a cause of action for Defendant's allegedly illegal decision not to rehire Plaintiff for different jobs at other Wal–Mart stores. The Court treats Plaintiff's argument as a Motion for Leave to File an Amended Complaint. *See Ganther v. Ingle,* 75 F.3d 207, 211–12 (5th Cir.1996) (per curiam); *Vernell v. United States Postal Serv.,* 819 F.2d 108, 110 (5th Cir.1987); *Sherman v. Hallbauer,* 455 F.2d 1236, 1242 (5th Cir.1972). Because a responsive pleading has already been filed in this case, Plaintiff may only amend his complaint "by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a). This leave "shall be freely given [by the Court] when justice so requires." *Id.* However, whether or not to allow such an amendment falls within the Court's sound discretion. *See Overseas Inns S.A.P.A. v. United States,* 911 F.2d 1146, 1150 (5th Cir.1990). In the exercise of its discretion, the Court may consider several factors, including "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice by virtue of amendment, and futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In a case such as this, in which an opposing party has filed a motion for summary judgment, the Court will "carefully scrutinize a party's attempt to raise new theories of recovery by amendment." *See Parish v. Frazier,* 195 F.3d 761, 764 (5th Cir.1999) (per curiam). After a defendant has filed a motion for summary judgment, "[t]o grant [plaintiff] leave to amend is potentially to undermine the [defendant's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint." *Overseas Inns,* 911 F.2d at 1151. The Court shall not "without adequate grounds" allow Plaintiff to "avoid summary judgment by the expedient of amending its complaint." *Id.*

Plaintiff filed this lawsuit on May 26, 1999. On November 3, 1999, the parties appeared before the Court and various deadlines were set, including a discovery cut off date of April 7, 2000. In April 2000, the parties appeared to have settled this dispute, and the Court entered a thirty-day administrative closing order pending final settlement. This settlement, however, never came to fruition, and, on May 1, 2000, Plaintiff asked the Court to reinstate this matter to the Court's trial docket. The Court did not reach this request, but instead allowed Defendant to submit a dispositive motion requiring Plaintiff's response. Defendant filed this Motion for Summary Judgment based upon Plaintiff's original complaint, the live pleading in this lawsuit. Plaintiff responded to those arguments advanced by Defendant, but further averred that he had also suffered an additional act of discrimination not heretofore mentioned in his original complaint. According to Plaintiff, the allegation that Defendant retaliatorily failed to rehire Plaintiff was only set forth responsively in "an abundance of caution" as Defendant had "failed to address" this claim in its motion. Contrary to Plaintiffs' demurral, Defendant quite obviously did not address this claim because Plaintiff had never pled any facts or law that even remotely suggested that such a claim might exist. Moreover, the discovery materials before this Court indicate that Plaintiff never made any statement consistent with this newly asserted failure to rehire claim. When asked at his deposition on February 3, 2000 "how Wal–Mart has discriminated against you because of your disability," Plaintiff made no mention of a failure to rehire. Similarly, on January 16, 2000, when asked by interrogatory to "describe fully and completely ... each and every fact tending to support [the discrimination claim] prior to, during, or following your departure," Plaintiff made no suggestion that Wal–Mart had failed to re-hire him for another position. Now at this late juncture, after the completion of all discovery, after a failed settlement and

the passage of fifteen months since Plaintiff first filed this lawsuit, Plaintiff would have this Court permit him to amend his complaint. This request is utterly abusive, and the Court is tempted to sanction Plaintiff's counsel for not only dilatory conduct, but also for the disingenuous manner by which Plaintiff raises these never before mentioned allegations. It seems apparent that Plaintiff, at best, suffered from some egregious amnesia in "forgetting" to allege these facts by complaint or in response to discovery requests. Such a failure, however, does not entitle Plaintiff to bring these allegations now, in response to a motion for summary judgment, to which, by Court order, Plaintiff knew Defendant would have no opportunity for reply and which was unmistakably prepared without reference to Plaintiff's present allegations. The leave of this Court required for Plaintiff to amend his complaint is **DENIED.**

### III. CONCLUSION

As discussed above, the Plaintiff's "Motion for Leave to File an Amended Complaint" is **DENIED.** Furthermore, as stated, the Defendant's Motion for Summary Judgment is **GRANTED,** and all of Plaintiff's discrimination claims are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Order issued this date, Defendant's Motion for Summary Judgment is hereby **GRANTED** and Judgment is entered for Defendant. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date. **THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**